|  |  |  |
|---|---|---|
| UTICA MUTUAL INSURANCE COMPANY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 18-cv-1646 |
| | : | |
| | : | |
| CINCINNATI INSURANCE COMPANY, | : | |
| Defendant. | : | |
| | : | |

**O P I N I O N**
**Plaintiff's Partial Motion for Summary Judgment, ECF No. 45—Granted in part**
**Defendant's Motion for Summary Judgment, ECF No. 29—Denied**

**Joseph F. Leeson, Jr.**                                                        **January 15, 2019**
**United States District Judge**

## I.     INTRODUCTION

In this fire insurance claim dispute, two commercial buildings with separate street

addresses were connected by a covered walkway. A fire destroyed one of the buildings, but not

the other. The business operating out of the two addresses had a commercial insurance policy

issued by Defendant Cincinnati Insurance Company and sought coverage for the damage to the

building. The parties, the business's assignee and the insurer, do not dispute that the commercial

policy covered damage to the building that did not burn down. The defendant insurer argues that

the two buildings were separate and the policy did not cover damage to the destroyed building.

The plaintiff assignee argues that, because the buildings were connected, they formed a single

building and the coverage for the surviving building extends to the destroyed building as well.

The defendant refused to cover the damage to the destroyed building and the plaintiff

sued for breach of the insurance policy. Both parties have moved for summary judgment. This

Court concludes that both parties present reasonable interpretations of the policy documents, and thus that the policy is ambiguous. This Court considers extrinsic evidence of the parties' intentions and concludes that it does not resolve the ambiguity one way or another. Therefore, this Court applies the Pennsylvania principle of *contra preferentem*, construes the policy in favor of coverage, and grants summary judgment in favor of the plaintiff as to liability on its breach of contract claim. However, because a dispute of fact remains concerning the value of the destroyed building to which the plaintiff is entitled under the policy, this Court denies summary judgment with respect to damages.

## II.     FACTUAL BACKGROUND

The following facts are undisputed:

For many years, Prizer-Painter Stove Works, Inc. conducted business operations at property in Reading, Pennsylvania, comprised of two separate street addresses: 200 Orrton Avenue and 600 Arlington Street. Stat. Facts ¶¶ 1-3.[1] Buildings, each with walls and a roof, stood at 200 Orrton and 600 Arlington and were connected by a covered walkway with walls and a roof. Stat. Facts. ¶¶ 4, 22.

Defendant Cincinnati Insurance Company issued a commercial property insurance policy with various kinds of coverages to Prizer; the policy was effective from July 1, 2015, to July 1, 2018. Stat. Facts. ¶¶ 5, 7.

On April 22, 2016, a fire destroyed 200 Orrton and its contents, but not 600 Arlington. Stat. Facts. ¶ 16. Prizer sought coverage under the policy for the fire damage to 200 Orrton and Cincinnati made a payment under the policy for Prizer's destroyed business personal property

---

[1]     Except where noted, all references to "Stat. Facts" refer to Utica's Statement of Facts, ECF No. 45-1, and Cincinnati's corresponding responses, ECF No. 49-1.

located at 200 Orrton, Prizer's lost business income and extra expenses. Stat. Facts. ¶ 17; Philpot Decl. ¶¶ 9-10, Ex. A to Cincinnati's Motion, ECF No. 29-2. Prizer also sought building coverage equal to the cost to replace 200 Orrton, but Cincinnati determined that although the policy provided building coverage for 600 Arlington, it did not provide building coverage to 200 Orrton. Stat. Facts. ¶¶ 18, 23, 30. Cincinnati knew about the enclosed walkway connecting 200 Orrton and 600 Arlington at the time it denied building coverage. Stat. Facts. ¶ 24. Prizer and Prizer's insurance agency, Gallen Insurance, took the position that 600 Arlington and 200 Orrton were considered one building under the policy. Stat. Facts. ¶ 33.

In December 2016, Prizer filed a lawsuit against Gallen Insurance in the Court of Common Pleas for Berks County, Pennsylvania, alleging that Gallen Insurance, as an authorized insurance agent for Cincinnati and Prizer's insurance broker, negligently failed to obtain building coverage for 200 Orrton. Cincinnati's Counterstat. Facts ¶ 57; Utica's Response to Cincinnati's Counterstat. Facts ¶ 57, ECF No. 52; Cincinnati Ex. M, ECF No. 49-14.

On March 19, 2018, Prizer, Gallen Insurance, and Plaintiff Utica Mutual Insurance Company (the errors and omissions liability carrier for the insurance agent, Gallen Insurance) entered an agreement to settle the lawsuit against Prizer. Cincinnati's Counterstat. Facts ¶ 63; Utica Response to Cincinnati's Counterstat. Facts, ¶ 63. As part of this agreement and in exchange for $2.8 million, Prizer assigned all claims against Cincinnati resulting from the fire to Utica. Cincinnati's Counterstat. Facts ¶ 64; Utica Response to Cincinnati's Counterstat. Facts, ¶ 64.

Utica filed suit against Cincinnati in this Court on April 19, 2018. Complaint, ECF No. 1. Utica brings claims for breach of contract, reformation of the insurance policy, and bad faith, alleging that Cincinnati wrongly denied Prizer's building coverage claim for 200 Orrton.

Cincinnati moved for summary judgment on all of Utica's claims well in advance of the close of discovery, arguing that the policy is unambiguous and provides no building coverage for 200 Orrton. ECF No. 29. Utica later filed a cross-motion for partial summary judgment on its breach of contract claim, arguing that the policy is unambiguous and provides building coverage for 200 Orrton or, if the policy is ambiguous, that extrinsic evidence shows the parties' intentions to provide building coverage for 200 Orrton. ECF No. 45. These motions are ripe for decision.[2]

## III.    LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

---

[2]      Cincinnati's early motion for summary judgment, filed before the completion of discovery, prompted several other motions. Utica moves to strike arguments Cincinnati made in its reply in support of its motion for summary judgment, based on new information learned in discovery, which Cincinnati did not raise in its motion. In the alternative, Utica requests leave to file a sur-reply. This Court grants Utica's motion, and will consider Utica's sur-reply brief in opposition to Cincinnati's motion for summary judgment, ECF No. 43-1, in deciding the cross-motions for summary judgment.

Both parties also move to supplement the record on their respective motions. Utica moves to supplement its opposition to Cincinnati's summary judgment motion based on additional discovery after briefing for Cincinnati's motion concluded. ECF No. 53. Cincinnati moves to supplement the record for both summary judgment motions with the reports prepared by its experts after the briefing for both summary judgment motions concluded. ECF No. 54. Both motions are granted. This Court will consider all the parties' arguments and the entire record in deciding the cross-motions.

257 (1986).  The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once such a showing has been made, the non-moving party must go beyond the

pleadings with affidavits, depositions, answers to interrogatories or the like in order to

demonstrate specific material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56;

*Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986) (stating that the non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts").  The party opposing the motion must produce

evidence to show the existence of every element essential to its case, which it bears the burden of

proving at trial, because "a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323;

*see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).  "Inferences should be drawn

in the light most favorable to the non-moving party, and where the non-moving party's evidence

contradicts the movant's, then the non-movant's must be taken as true."  *Big Apple BMW, Inc. v.*

*BMW of N. Am. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

## IV.     ANALYSIS

The parties do not dispute that the insurance policy is a valid contract between Prizer and

Cincinnati, or that Cincinnati has provided coverage already for Prizer's destroyed business

personal property located at 200 Orrton, lost business income, and extra expenses. The issue is

whether the policy also required Cincinnati to provide building coverage, or cover the cost of the

damage to 200 Orrton.

Utica argues that the policy unambiguously provides building coverage to 200 Orrton

because it covers "the building or structure" described as 600 Arlington. Utica urges this Court to

adopt the plain meaning of "building" as a structure with a roof and walls and argues that

because an enclosed walkway with walls and a roof connects 200 Orrton and 600 Arlington, the

structures are one "building" under the building coverage for 600 Arlington. Utica also argues

that, to the extent the policy is ambiguous, it must be resolved in favor of coverage. In support

of resolving any ambiguity in its favor, Utica points to extrinsic evidence and argues that the

standard trade usage of the term "building" and the course of Pritzer and Cincinnati's dealings

show their intent that the coverage for 600 Arlington would include 200 Orrton.

Cincinnati argues that the policy unambiguously provides no building coverage for 200

Orrton. Cincinnati points to the policy's Schedule of Locations, which lists 600 Arlington and

200 Orrton as separate locations, numbers 1 and 2, respectively. The policy's Declarations page

lists building coverage only for what Cincinnati interprets as Location 1, but lists no building

coverage for Location 2. Thus, argues Cincinnati, the policy unambiguously excludes building

coverage for 200 Orrton. Cincinnati argues that, even if the policy is ambiguous, the extrinsic

evidence Utica cites does not support Utica's single-building theory because it does not show

that Cincinnati ever intended the policy to extend building coverage to 200 Orrton. Cincinnati

cites testimony of Gallen employees and notes from Gallen's internal evaluation of the policy

after the fire to show that the parties did not contemplate building coverage for 200 Orrton.

Cincinnati also argues that, because Prizer previously sued Gallen for negligently failing to

obtain building coverage for 200 Orrton, Prizer's admission that 200 Orrton was not covered

binds Utica as Prizer's assignee.

"The interpretation of an insurance contract regarding the existence or non-existence of

coverage is 'generally performed by the court.'" *Minnesota Fire & Cas. Co. v. Greenfield*, 855

A.2d 854, 861 (2004) (quoting *General Accident Insurance Co. of America v. Allen*, 692 A.2d

1089, 1093 (1997)). In interpreting an insurance contract, the Court must "ascertain the intent of the parties as manifested by the terms used in the written insurance policy." *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (2007) (citing *401 Fourth Street, Inc. v. Investors Ins. Grp.*, 879 A.2d 166, 171 (2005)). "[W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed." *Lesko v. Frankford Hosp.-Bucks Cnty.*, 15 A.3d 337, 342 (2011) (quoting *Steuart v. McChesney*, 444 A.2d 659, 661 (1982) ); *see also Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 481 (2006) ("When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself.") (citations omitted).

"Where a contract provision is ambiguous, however, extrinsic evidence may be properly admitted in an attempt to resolve the ambiguity." *Beta Spawn, Inc. v. FFE Transportation Servs., Inc.*, 250 F.3d 218, 227 (3d Cir. 2001) (citing *In re Herr's Estate*, 161 A.2d 32, 34 (1960)). But a contract will be found ambiguous if it is "reasonably or fairly susceptible of different constructions" and is "obscure in meaning through indefiniteness of expression or has a double meaning." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 93 (3d Cir. 2001) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995)). A contract is not ambiguous just because the parties do not agree on the proper construction. *Id.*

In the context of insurance contracts, Pennsylvania courts have adopted "the *contra proferentem* principle of interpretation . . . by which ambiguities in policies are construed against the insurer." *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 905 (3d Cir. 1997) (internal citations omitted). Under this principle, when a provision in an insurance policy is ambiguous, "the policy is to be construed in favor of the insured . . . and against the insurer, as the insurer drafts the

policy and controls coverage." *Baumhammers*, 938 A.2d at 290 (quoting *Kvaerner Metals Div.*

*of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (2006) ). *See also West*

*v. Lincoln Benefit Life Co.*, 509 F.3d 160, 169 (3d Cir. 2007) ("An unclear, ambiguous provision

will be construed against the insurer and in favor of the insured."). Thus, when extrinsic evidence

does not resolve an ambiguity, courts construe the ambiguous provision in favor of the insured

and against the insurer as the drafter of the agreement. *Lomma v. Ohio Nat'l Life Assurance*

*Corp.*, 329 F. Supp. 3d 78, 94–95 (M.D. Pa. 2018) (quoting *Nat'l Cas. Co. v. Young*, 2009 WL

2170105, at *3 (E.D. Pa. July 17, 2009)).

**A. The policy is ambiguous with respect to building coverage for 200 Orrton.**

In this case, the parties both present reasonable constructions of the insurance policy,

which this Court concludes is ambiguous. The policy's Building and Personal Property Coverage

Form explains that Cincinnati will pay for loss to a covered "building," as defined by the

policy's Declarations page:

> **SECTION A. COVERAGE**
>
> We will pay for direct physical "loss" to Covered Property at the "premises" caused by or
> resulting from any Covered Cause of Loss.
>
> **1.** <u>**Covered Property**</u>
>
> Covered Property, as used in this Coverage Part, means the following types of property
> ***for which a Limit of Insurance is shown in the Declarations***:
>
> > **a.** <u>**Building**</u>
> > Building, means ***the building or structure described in the Declarations***,
> > including:
> >
> > **(1)** ***Completed additions***. . . .

ECF No. 29-3, at CIC003497 (emphases added). The policy's Declarations lists various

coverages provided, including four items described only as "Building:"

| Item | Coverage | Limits | Coinsurance | Covered Cause Of Loss | Inflation Guard (%) | Replacement Cost (x) | Replacement Cost Incl. Stock (x) | Agreed Value (x) | Monthly Limit (fraction) | Maximum Period (X) | Extended Period (Days) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | BLANKET BUSINESS PERSONAL PROPERTY | 17,770,000 | 90% | SPECIAL | | X | | | | | |
| 1-1 | BUILDING | 4,692,400 | 80% | SPECIAL | | X | | | | | |
| 2-1 | BUSINESS INCOME W/EXTRA EXPENSE (b) | 12 MONTHS ALS SEE FA242 | | SPECIAL | | | | | | | |
| 5-1 | BUILDING | 704,000 | 80% | SPECIAL | | X | | | | | |
| 10-1 | BUILDING | 21,100,000 | 90% | SPECIAL | | X | | X | | | |
| 10-2 | BUILDING | 795,000 | 90% | SPECIAL | | X | | X | | | |

ECF No. 29-3, at CIC003494. Above the excerpted section, in the box for the address of the covered location, the Declarations pages refers to another document, the Schedule of Locations. This document lists ten addresses in columns under the following headings: "LOC.; STREET ADDRESS; CITY; STATE; ZIP CODE." The Schedule of Locations lists "1" in the "LOC." Column for 600 Arlington St., Reading, PA 19611-2031 and "2" in the "LOC." column for 200 Orrton Ave., Reading, PA 19611. ECF No. 29-3, at CIC003494.

The parties seem to agree that Item 1-1 in the Declarations corresponds to Location 1 on the Schedule of Locations, *i.e.* 600 Arlington, although the policy documents do not make this connection explicitly. Even accepting the parties' interpretation, the question remains whether the listed "Building" coverage in Item 1-1 covers only 600 Arlington or 200 Orrton as well. The policy covers any "building or structure" described in the Declarations as well as any completed additions. The policy does not define "building or structure" as listed in the Declarations page, nor does it define "completed addition." Under Pennsylvania law, this Court must look to the contract as a whole for guidance in interpreting a term in the contract. *Bohler-Udderholm*, 247 F. 3d at 97.

Utica urges this Court to adopt an ordinary language definition of "building" as a structure with a roof and walls and conclude that, because an enclosed walkway with walls and a roof connects 200 Orrton to 600 Arlington, the property at both addresses forms a single building. Thus, the building coverage for 600 Arlington listed in the Declarations as Item 1-1 applies to 200 Orrton as well. Cincinnati counters that the Declarations page lists the locations to which coverage applies: Item 1-1 corresponds to Location 1 from the Schedule of Locations, 600 Arlington, and Item 2-1 corresponds to Location 2 from the Schedule of Locations, 200 Orrton. Because the Declarations pages lists building coverage for Item 1-1, but only "business income w/extra expense" for Item 2-1, the policy does not provide building coverage to 200 Orrton.

Both parties' interpretations find support in the policy documents. Contrary to Utica's arguments, a plain language understanding of "building" does not help resolve this difficulty because the parties do not dispute that 200 Orrton, 600 Arlington, and the walkway between them all have walls and rooves: the question is not how to define buildings, but rather how to count them.[3] But because the policy does not define "building or structure," Item 1-1 reasonably could refer to the entire structure comprising 600 Arlington, 200 Orrton, and the covered walkway between them. Moreover, 200 Orrton and the covered walkway might also be considered a "completed addition" to 600 Arlington, which the policy includes in the definition

---

[3]     The architecture of our nation's capital provides a counterexample to Utica's argument that a plain language definition of "building" requires treating 200 Orrton and 600 Arlington as a single building because they are connected. In Washington, D.C., an underground tunnel connects the Capitol Building with the Russell Senate Office Building to allow senators and their staffs to move back and forth conveniently. *See* Russell Senate Office Building, UNITED STATES SENATE, https://www.senate.gov/visiting/common/generic/RussellBuilding.htm. Like 200 Orrton, 600 Arlington, and the covered walkway between them, the Capitol Building, the Russell Senate Office Building, and the tunnel between them each consist of walls and a roof. Yet common parlance refers to them, not as a single building, but as the Capitol *Building* and Russell Senate Office *Building*.

of covered building. In support of its contrary interpretation, Cincinnati leans heavily on the fact that the Declarations page lists no building coverage for Item 2-1, which Cincinnati argues refers to 200 Orrton. Cincinnati argues that the Declarations thus show that the parties expressly intended to exclude building coverage for 200 Orrton; otherwise, there would be building coverage listed for Item 2. However, the absence of a separate building coverage listed for Item 2 cuts both ways: the absence of a separate listing for 200 Orrton could also mean that the parties intended the building coverage for 600 Arlington in Item 1-1 to extend to 200 Orrton as well. In short, this Court concludes that the policy is fairly susceptible to both parties' constructions and therefore that the policy is ambiguous.

### B. Utica's Extrinsic Evidence

After a court determines that an insurance policy is ambiguous, it may consider extrinsic evidence of the parties' intent. *Gillis v. Respond Power, LLC*, 677 F. App'x 752, 755–56 (3d Cir. 2017). Relevant extrinsic evidence "shows the purpose of the [contract], its subject matter, the situation of the parties, . . . the circumstances surrounding the making of the contract, and the negotiation process (if there was any negotiation)." *Id.* (quoting *Northbrook Ins. Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir. 1982)).

Utica points to three categories of extrinsic evidence that it argues establish the parties' intent to extend building coverage to 200 Orrton: (1) the parties' course of conduct, (2) records in insurance and public databases, and (3) alleged trade usage of the term "building."

First, Utica relies on evidence of the parties' course of conduct. Utica points first to an error in the square footage listed for 600 Arlington on Prizer's insurance application. The application lists a total area of 57,500 square feet for 600 Arlington, *see* Utica Ex. G at CIC000262, ECF No. 35-8, but the underwriting report Cincinnati received listed the area as

41,210 square feet, *see* Utica Ex. E at CIC000049, ECF No. 35-6. The underwriting report for

200 Orrton lists its total area as 28,752 square feet. Utica Ex. F at CIC000068, ECF No. 35-7.

Utica argues that Cincinnati's use of the larger number for 600 Arlington demonstrates the

parties' intent that building coverage for 600 Arlington would include 200 Orrton as well. This

conclusion does not follow. Adding the individual areas for 600 Arlington and 200 Orrton

according to the underwriting reports yields a total area of 69,962 square feet, not the 57,500

square feet listed for 600 Arlington. Additionally, Prizer's insurance application separately states

that 200 Orrton had a total area of 25,000 square feet, in addition to the 57,500 square feet figure

for 600 Arlington. The insurance application does not make clear that the parties intended the

building coverage for 600 Arlington to apply to 200 Orrton.

Utica submits further evidence of the parties' interactions to show that Prizer understood

it was purchasing building coverage for both 600 Arlington and 200 Orton. Utica cites to a letter

from Cincinnati's claims handler which Utica claims acknowledges Prizer's understanding that

200 Orrton and 600 Arlington were one building. Utica Opp. Ex. H at U001134, ECF No. 35-9.

However, this letter is dated April 28, 2016, after the fire on April 22, 2016, and merely

summarizes the position Prizer took after the fire. Utica offers some evidence of communications

from before the fire occurred that express Gallen Insurance's belief that 200 Orrton had coverage

as part of 600 Arlington. *See* Utica Opp. Ex. J at U000183-185, ECF No. 35-11, Ex. K at

U003869-71, ECF No. 35-12. However, this evidence shows communication between Gallen

Insurance and Prizer and Gallen Insurance and a third-party reviewer of insurance summaries—

Utica presents no evidence that Prizer or Gallen Insurance communicated Prizer's understanding

of the coverage to Cincinnati at the time they formed the contract or any other time prior to the

fire. Evidence of Prizer's "uncommunicated subjective understanding or intent" is irrelevant

because "the court's objective is to discover the meaning that each party had reason to know would be given to the words by the other party." *Gillis v. Respond Power*, LLC, 677 F. App'x 752, 755–56 (3d Cir. 2017) (internal quotations and citation omitted). Because "extrinsic evidence of one party's undisclosed, subjective understanding, intent, or opinion about the meaning of ambiguous contract language cannot be used to substantiate a particular interpretation of that language," *id.*, Utica's evidence of Prizer's private understanding does not resolve the ambiguity in its favor.

Second, Utica points to entries in Cincinnati's property database and Pennsylvania tax and property records to show that 200 Orrton was included in "the building or structure" described in the declarations. Utica performed a search of Berks County public tax records and claims that the search revealed a single "Industrial Building" on the parcel of land including 600 Arlington and 200 Orrton and produced no separate tax records for 600 Arlington. This evidence does not support Utica's position that only one building stood on the property, though, because the parcel search describes the property as "Industrial Building" and "Detached Improvements."[4] Utica Opp. Ex. I, Ex. 35-10. Also, as Cincinnati points out, Utica performed the search on October 22, 2018, long after 200 Orrton had been destroyed. Utica's evidence from the property database similarly fails to support its single-building theory. Utica offers evidence that running a search in Cincinnati's database for 200 Orrton reveals no results, but searching for Prizer's business located at 200 Orrton Avenue returns a result for Prizer at 600 Arlington. Thus, Utica reasons, Cincinnati was aware that the building at 600 Arlington included 200 Orrton. However,

---

[4]     Indeed, the parcel search seems to describe the land and provides little insight into the building—or buildings—constructed on it. The results list a "location address" of 200 Orrton Avenue, but a "Mailing Address" of 400 Orrton Avenue. The search includes a map with the entire parcel of land outlined in red; inside the parcel is a dot labeled "600."

as Cincinnati explains, the evidence Utica provides comes not from Cincinnati's database, but from a database operated by a third party. Utica provides no evidence that the information in the database reflects Cincinnati's understanding of the terms of the policy. Additionally, just because the database links 200 Orrton and 600 Arlington does not mean that the parties intended to treat them as one building: the policy documents list both 200 Orrton and 600 Arlington separately and contain coverages for each. Thus, their linked presence in the database is consistent with Cincinnati's position as well as Utica's.

Lastly, Utica argues that the trade usage of the term "building" in the insurance industry would understand 200 Orrton, 600 Arlington, and the covered walkway as one building. Utica offers three sources to demonstrate that the term "building" is commonly understood to include two connected properties. Utica first cites the definition of "building" in various insurance treatises, in effect to establish that a building requires a structure with walls and a roof.[5] However, these definitions do not support Utica's interpretation because, as discussed above, defining a building as a structure with walls and a roof does not determine whether 200 Orrton and 600 Arlington comprise one building or two. Utica next offers the testimony of Dave Gallen, a Gallen Insurance representative, that it is common knowledge in the insurance industry that properties like 200 Orrton and 600 Arlington would be considered part of the same "building" when connected by an enclosed walkway. However, no reasonable jury could find that Gallen's testimony establishes Utica's interpretation of "building" as "having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to [a particular agreement]." *Artesian Water Co. v. Chester Water Auth.*, No. CIV.A. 10-

---

[5] Utica cites two sources that define "building" as any structure with walls and a roof and one treatise that defines "building" as "a structure or edifice enclosing a space within its walls and usually, but not necessarily, covered with a roof." Utica Mot. 28-29.

7453, 2012 WL 3029689, at *4 (E.D. Pa. July 24, 2012) (quoting *Nationwide Life Ins. Co. v.*

*Commonwealth Land Title Ins. Co.*, Civ. A. No. 05–281, 2011 WL 204619, at *8 (E.D. Pa.

Jan.20, 2011) (alteration in original). Gallen relies only on his own understanding and vague

recollections of Insurance Agents & Brokers seminars he may have attended in the 1990s,

although he could remember no specifics. Gallen Dep. 167:15-175:22, Cincinnati Reply Ex. D,

ECF No. 39.

Third, Utica offers opinions from two experts, David L. Stegall and Olie R. Jolstead, to

establish that the insurance industry commonly understands the term "building" to include

connected properties. However, Stegall only offers a definition of "building" and his own

opinion that 200 Orrton should have been covered; not that any industry standard would regard

the two properties as one building.[6] Jolstead simply asserts without explanation or evidence that

trade usage would understand both properties as one building.[7] Utica's experts do not provide

---

[6]     Stegall largely limits his analysis to reiterating Utica's proposed "walls-and-roof"
definition of "building," which, as previously discussed, does not establish *how many buildings*
the policy covered:

> Based on my experience, the term "building" is commonly understood in the
> insurance industry to mean roofed structures, and "structure" is more broadly
> understood to mean anything constructed. These terms are recognized in the
> industry to include traditional buildings with walls, a floor, and a roof, and can
> include other properties depending on the circumstances. Given the trade usage and
> common and ordinary understanding of these terms, a knowledgeable underwriter
> would know that a building like 600 Arlington connected by a permanent, enclosed
> walkway to 200 Orrton fits the industry definition of "building or structure." In my
> opinion, CIC should have applied these definitions when evaluating the risk during
> the underwriting process, as well as after the loss.

Utica Ex. 3 at 3, ECF No. 45-5.
[7]     Jolstead states simply: "According to information provided for review, Prizer, since at
least 2009, has considered property at 600 Arlington Street and 200 Orrton Avenue as a single
building for commercial property building coverage purposes. The property at those addresses is
connected by a covered walkway, thus being considered as one building." Utica Ex. 4 at 5, ECF
No. 45-6.

any evidence of a trade usage that supports Utica's single-building theory.[8] Altogether, Utica's proffered extrinsic evidence does not resolve the ambiguity in favor of its single-building interpretation of the policy.

## C. Cincinnati's Extrinsic Evidence

Cincinnati offers its own extrinsic evidence in support of its position that the policy does not provide building coverage to 200 Orrton. First, Cincinnati contends that Dave Gallen admitted during his deposition that the insurance application for the policy at issue and other policy documents do not reflect building coverage for 200 Orrton. Cincinnati's argument misrepresents the nature of Gallen's testimony, though: Cincinnati cites instances of Gallen explaining the contents of various documents, not making any admissions concerning building coverage under the policy. *See* Gallen Dep. 22:18-23:9, 44:4-14, 74:11-21, 82:6-17, 83:14-22, 88:6-20, 124:11-15, 204:22-205:5, ECF No. 39.

Second, Cincinnati relies on another Gallen Insurance employee's statements interpreting documents. After the fire, Gallen Insurance's Amy Fox investigated the company's records regarding building coverage for 200 Orrton and hand-wrote notes on some of these documents.

---

[8]     Although Cincinnati argues that its own experts controvert Utica's, *see* Cincinnati Opp. 23, Cincinnati's experts do not address trade usage, either. Peter Evans largely reiterates Cincinnati's position that, because two separate Locations were listed, the buildings were separate, with no real discussion of the meaning of "building." Cincinnati Mot. Supplement Ex. A, ECF No. 54-2, ("While Gallen contends that it viewed the building at 200 Orrton Ave. as a part of Location # 1, 600, Arlington St., because there was a walkway between the buildings, this is inconsistent in my opinion with the scheduling of separate locations for buildings at the two addresses). Dave L. David simply asserts that he disagrees with Gallen and Stegall without providing any competing analysis or evidence of trade usage. Ex. B, ECF No. 54-3, ("Mr. Gallen and Utica's expert, David Stegall, also state that it is standard practice in the insurance industry to consider buildings with a walkway as one. Based on my extensive experience in the insurance industry as an underwriter and as an agency consultant, I disagree with Mr. Gallen's and Mr. Stegall's statements.").

Cincinnati highlights three examples and contends that they establish that the policy does not provide building coverage for 200 Orrton:

1. Fox wrote on a copy of a 2004 listing of Prizer's locations that "[T]his is the 1st time 200 Orrton appears in our system (that I can find) and it was listed separately for building COV at this point." Cincinnati Opp. Ex. F at U003757, ECF No. 49-7.

2. Fox wrote a copy of a 2008 email to Cincinnati from Gallen Insurance's Kelly Swanger that addressed quoted building coverage for 600 Arlington for the 2008-2009 policy year: "Did not request AV or list 200 Orrton as part of bldg." Cincinnati Opp. Ex. J at U002322, ECF No. 49-11.

3. Fox wrote on a July 16, 2009 email from Gallen Insurance's Kelly Swanger to Wells Fargo's Maureen Lally, telling Lally that the buildings were connected and thus the coverage supplied for 600 Arlington applied to 200 Orrton: "Cannot locate anything in Applied from Cincinnati advising this is one location – Just activity Kelly entered 7/16/09 indicating this & that it was ok'd by Dave Gallen." Cincinnati Opp. Ex. L at U003864, ECF No. 49-13.

As was the case with Gallen's deposition testimony, Fox's notes relate to her interpretation of the documents in Utica's possession, not to the parties' intentions in forming the insurance contract. Furthermore, the documents Cincinnati emphasizes all predate Prizer's application for the policy at issue[9] and appear to relate to previous coverage years; Cincinnati offers no evidence to establish their relevance to the policy issued in 2015. Fox's notes establish, at best, a lack of

---

[9]    Prizer's application is dated June 5, 2015. *See* Utica Opp. Ex. G at CIC000247, ECF No. 35-8

documentary evidence to support Utica's position—not any affirmative evidence to support Cincinnati's.

Next, Cincinnati argues that Utica has made a judicial admission that there is no building coverage for 200 Orrton. Cincinnati points to a 2017 lawsuit by Prizer against Gallen Insurance in the Court of Common Pleas for Berks County, in which Prizer alleged that Gallen Insurance "negligently and inexplicably failed to procure insurance coverage for 200 Orrton." Cincinnati Opp. 16. Cincinnati argues that Utica, as Prizer's assignee, "stands in Prizer's shoes" and is bound by Prizer's admission in its complaint that Gallen Insurance did not obtain building coverage for 200 Orrton. Judicial admissions are concessions in pleadings or briefs that bind the party who makes them. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 211 n.20 (3d Cir. 2006). However, only statements of fact subject to evidentiary proof can be judicial admissions, not a party's legal positions. *See United States v. Bogart*, 715 F. App'x 161, 171 n.8 (3d Cir. 2017) (noting that court was "doubtful" that answer to complaint denying ownership of property was "judicial admission" that prevented party from asserting an ownership interest). Cincinnati relies on Prizer's legal claims, not its assertions of fact. Moreover, judicial admissions bind the party who made them only in the cause of action in which the party made them. *Homel v. Sun Ins. Office, Ltd.*, No. CIV. A. 92-0442, 1993 WL 56028, at *3 (E.D. Pa. Feb. 27, 1993). Cincinnati cannot rely on a judicial admission made by Utica's predecessor in interest in a previous case.

Lastly, Cincinnati argues that because Utica has admitted that the policy documents speak for themselves, Utica has admitted that the policy is unambiguous. This argument does not establish that the policy provided coverage for 200 Orrton. Utica has in fact taken the position

that the policy documents are unambiguous throughout this litigation, but asserts that the policy unambiguously provides building coverage for 200 Orrton.

To summarize, this Court finds that the policy is ambiguous as to whether it provided building coverage for 200 Orrton and that the extrinsic evidence submitted by the parties does not resolve the ambiguity. Therefore, applying Pennsylvania's principle of *contra preferentem*, which provides that "the policy is to be construed in favor of the insured . . . and against the insurer, as the insurer drafts the policy and controls coverage," this Court will resolve the ambiguity in favor of coverage and grant summary judgment to Utica on its breach of contract claim. *See Lomma*, 329 F. Supp. 3d at 94–95 (granting summary judgment in favor of insured) (quoting *Baumhammers*, 938 A.2d at 290).

### D.  Damages

The parties also dispute the proper measure of damages under the policy and the amount to which Utica is entitled. Utica contends that it can recover the full replacement cost of 200 Orrton and presents evidence that the cost to replace 200 Orrton is $3,256.063.02. Utica Mot. 30. Utica also argues that it is entitled to prejudgment interest. *Id.*

Cincinnati responds that the policy only allows for replacement costs if the building has actually been repaired or replaced or if repairs have begun within two years of the loss, but that Utica presents no evidence that the destroyed building has been repaired or replaced. Cincinnati presents the expert opinion of Douglas L. MacKinney that the replacement cost of 200 Orrton is $2,574,628, and that the replacement less depreciation is $2,137,611. MacKinney Report, Ex. C to Cincinnati's Motion to Supplement Summ. J. Record, ECF No. 54-4.

Regardless of whether Utica is entitled to the full replacement cost of 200 Orrton or the actual value (the replacement cost minus depreciation), an issue of fact remains concerning the

value of the building. Therefore, although this Court grants summary judgment in favor of Utica with respect to liability on its breach of contract claim, summary judgment is denied with respect to damages. *See In re Jordan*, 403 B.R. 339, 345 (Bankr. W.D. Pa. 2009) (granting summary judgment on liability but not damages where dispute of material fact existed concerning value of property at issue); *NN&R, Inc. v. One Beacon Ins. Grp.*, No. CIV. 03-5011 (JBS), 2006 WL 1765077, at *10 (D.N.J. June 26, 2006) (denying summary judgment where parties offered competing proofs concerning cash value of damage to property).

### E. Utica's Remaining Claims for Reformation and Bad Faith

Utica's Complaint includes two additional claims on which Utica did not move for summary judgment. Utica likely cannot prevail on either one. Utica brings a claim for reformation of the insurance policy in the event of a determination that the policy did not include coverage for 200 Orrton. Compl. ¶¶ 37-40. However, this Court has determined that the policy did provide building coverage for 200 Orrton. Utica also brings a Pennsylvania state law claim for bad faith, alleging that Cincinnati acted in bad faith by denying building coverage for 200 Orrton even though it knew that the policy provided coverage for 200 Orrton. Compl. ¶¶ 41-49. A valid cause of action for bad faith under Pennsylvania law requires "clear and convincing evidence . . . that the insurer: (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). "A reasonable basis is all that is required to defeat a claim of bad faith." *Id. See also Frog, Switch & Mfg. Co. V. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999). Based on the undisputed facts, it appears that Utica can show at most that Cincinnati relied on its competing interpretation of the

policy in denying building coverage for 200 Orrton. As this Court found above, Cincinnati's interpretation was reasonable, which means that Utica likely cannot prevail on a bad faith claim based on Cincinnati's decision to deny coverage.

Cincinnati moved for summary judgment on the bad faith claim, but on the basis that those claims failed because the policy did not provide building coverage for 200 Orrton. Cincinnati Mot. 6-7. A court may grant summary judgment on grounds not raised by a party, but must give notice and a reasonable time to respond. Fed. R. Civ. P. 56(f). Therefore, Utica will be granted an opportunity to show cause why summary judgment should not be entered in Cincinnati's favor on Utica's claims for reformation and bad faith in Counts II and III.

## V.     CONCLUSION

For the reasons discussed above, this Court grants Utica's motion for partial summary judgment on its breach of contract claim with respect to liability, but denies the motion with respect to damages. Cincinnati's motion for summary judgment is denied. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge