UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UTICA MUTUAL INSURANCE COMPANY, | : | |
| Plaintiff, | : | |
| v. | : | No. 18-cv-1646 |
| CINCINNATI INSURANCE COMPANY, | : | |
| Defendant. | : | |

**O P I N I O N**
**Plaintiff's Motion in Limine No. 1 – Damages Limitations, ECF No. 55—Denied**

**Joseph F. Leeson, Jr.**                                                                             **January 23, 2019**
**United States District Judge**

    **I.     INTRODUCTION**

    This judicial opinion is issued in response to a motion and briefs filed by the litigants in this case and therefore, it assumes familiarity with the facts and procedural history as previously outlined in this Court's earlier Opinion on summary judgment. ECF No. 67. That earlier decision entered partial summary judgment in favor of the plaintiff, and against the defendant, on liability only. The question of damages remains unresolved.

    The parties dispute the measure of damages available under the Cincinnati policy's building coverage for the damaged 200 Orrton. Utica (the assignee of the insured building owner) argues that it can recover the full replacement cost of the damaged 200 Orrton, and Cincinnati argues that the policy limits Utica to the actual cash value of the building because Prizer did not repair or replace the damaged 200 Orrton. Cincinnati also argues that Utica's recovery is subject to a coinsurance penalty.

Utica has filed a motion in limine to preclude Cincinnati from arguing that these coverage limitations limit Utica's recovery. Utica argues that that Cincinnati's refusal to pay any building coverage hindered Prizer's ability to rebuild, and therefore the Court should excuse the Cincinnati policy's requirement that Prizer begin repairs to or replacement of the damaged 200 Orrton to be eligible to receive replacement cost. Utica also moves to preclude Cincinnati's damage limitations arguments under Rule 37(c) on the ground that Cincinnati did not disclose them during discovery.

## II. ANALYSIS

### A. Excusal of replacement condition in the Cincinnati policy

The Cincinnati policy provides that the default measure of recovery is the "Actual Cash Value" of the covered property:

> **7. Valuation**
>
> We will determine the value of Covered Property in the event of "loss" as follows:
>
> a. At "Actual Cash Value" as of the time of "loss", except as provided in b., c., d., and e. below.

ECF No. 29-3 at CIC003524. A party who has purchased replacement cost coverage may only recover the replacement cost when the damaged property is actually repaired or replaced:

> **3. Replacement Cost**
>
> d. We will not pay on a replacement cost basis or any "loss":
>
> (1) Until the lost or damaged property is actually repaired or replaced with other property of generally the same construction and used for the same purpose as the lost or damaged property; and
>
> (2) Unless the repairs or replacement have been completed or at least underway within 2 years following the date of "loss".

ECF No. 29-3 at CIC003527.

Utica acknowledges this condition on recovering replacement cost, but argues that it should not apply. Utica argues that Cincinnati, by denying any payment for damage to 200 Orrton, prevented Prizer from rebuilding the damaged building. Therefore, it would be inequitable for Utica to rely on the policy provision requiring Prizer to at least begin repairs or replacement before being entitled to replacement costs.

Utica essentially presents this same argument twice, expressed in terms of different legal concepts each time. Utica first argues that Cincinnati's denial of coverage operated as a waiver of the replacement requirement, a "voluntary and intentional abandonment of a known right." Mot. 8 (citing *Prime Medica Assocs. v. Valley Force Ins. Co.*, 970 A.2d 1149, 1156 (Pa. Super. Ct. 2009). In the two cases Utica cites in support of its waiver argument, insurers denied claims, and later tried to avoid liability on the ground that the insureds had not filed proofs of loss—after their claims had already been denied. *See Fedas v. Ins. Co. of State of Pennsylvania*, 151 A. 285, 287 (1930) (holding that insurer could not defeat claim on ground that insured had not filed proof of loss, when insurer's agent visited site of fire and denied coverage on another ground); *Liberto v. Mut. Ben. Health & Acc. Ass'n*, 323 F. Supp. 1274 (W.D. Pa. 1971) (where insurer refused to make further payments under policy, which provided for monthly payments for life in event of total loss of time resulting from accident, insurer thereby waived term of policy requiring that insured give insurer notice of continuance of insured's disability every six months).[1]

---

[1] These cases, though, hinge on the determination that submitting the proofs of loss would be unnecessary after coverage had been denied; Utica does not contend that rebuilding the damaged 200 Orrton would be unnecessary, but rather impossible, or at least difficult, without funds from Cincinnati.

Second, Utica argues that Cincinnati repudiated the contract, such that Prizer was excused from the replacement condition.[2] Mot. 11. Cases which Utica cites in this section of its brief rely on a third legal doctrine, the "doctrine of prevention." As stated by the Supreme Court of Nebraska, the doctrine of prevention provides that "where a promisor prevents, hinders, or renders impossible the occurrence of a condition precedent to his or her promise to perform, the promisor is not relieved of the obligation to perform and may not invoke the other party's nonperformance as a defense when sued upon the contract." *D & S Realty, Inc. v. Markel Ins. Co.*, 816 N.W.2d 1, 13 (Neb. 2012) (citing 13 Samuel Williston, *A Treatise on the Law of Contracts* § 39:3 (Richard A. Lord ed., 4th ed. 2000)). The *D&S Realty* court recognized that courts routinely apply the doctrine of prevention to replacement requirements that leave the insured in a "no win" situation, whereby "[t]he insured, in order to recover under the replacement cost coverage he or she purchased, would have to incur the cost of repairs and replacements when there is no guarantee that a future breach of contract action by the insured will be successful. *Id.* at 14.[3]

---

[2] Utica cites an Iowa state case which relied on the doctrine of repudiation, *Conrad Bros. v. John Deere Ins. Co.*, 640 N.W.2d 231, 242 (Iowa 2001) ("There is substantial evidence from which the court could have concluded Conrad Bros. would have repaired but for John Deere's repudiation. Consequently, that condition is excused, and Conrad Bros. is entitled to damages based on the full replacement costs.").

[3] *See also Zaitchick v. Am. Motorists Ins. Co.*, 554 F. Supp. 209, 217 (S.D.N.Y. 1982) (insurer's refusal to pay "made it impossible for plaintiffs to fulfill the condition precedent, and therefore, excuses plaintiffs from performance of the replacement condition"), *aff'd sub nom. Zaitchick v. Am. Motors Ins.*, 742 F.2d 1441 (2d Cir. 1983); *Bailey v. Farmers Union Co-op. Ins. Co. of Nebraska*, 498 N.W.2d 591, 598 (Neb. Ct. App. 1992) (holding that insurer's refusal to assure insured that it would cover replacement cost prevented insured from satisfying the condition of rebuilding and claiming costs within 180 days, and that trial court did not err in excusing condition and awarding replacement cost); *Pollock v. Fire Ins. Exch.*, 423 N.W.2d 234, 237 (Mich. Ct. App. 1988) ("[D]efendant did not work with plaintiff to promptly pay the claim and enable her to repair or replace the building; rather, it did as much as possible to hinder plaintiff and delay or prevent the payment of the claim. We will not now allow defendant to raise

4
012319

Regardless of the specific theory advanced[4]—waiver, repudiation, or prevention—the underlying argument is the same: it is inequitable for an insurer to withhold payment of actual value, thus preventing the insured from replacing or repairing damaged property, and later deny replacement cost coverage because the insured did not comply with a replacement requirement.

Although this Court did not find any decision of the Pennsylvania Supreme Court directly on point, several decisions of the Pennsylvania Superior Court provide insight into how Pennsylvania law applies to address a replacement requirement when an insurer has denied liability and later been found liable. Utica cites *Ferguson v. Lakeland Mutual Insurance Co.*, 596 A.2d 883 (Pa. Super. Ct. 1991), as an example of a Pennsylvania court's refusal to enforce policy conditions requiring the insured to replace damaged property using its own funds before being able to recover replacement costs. In *Ferguson,* the claimants sought payment under their homeowners' policy for damage to their electric organ, which was struck by lightning. *Id.* at 884. The policy required the insured to either repair or replace damaged property before receiving the replacement cost of the property. *Id.* The insurance company denied the claim, and the claimants were forced to initiate a lawsuit to establish liability. *Id.* Although the insurer argued that the claimants could recover only the actual cash value of the organ, a jury returned a verdict for the replacement cost. *Id.*

On appeal, the Pennsylvania Superior Court affirmed the jury verdict. The court held that the replacement cost provision was unconscionable because it required claimants to advance the

---

as a defense plaintiff's failure to perform an act which defendant itself greatly hindered plaintiff from performing.").

[4]     Utica cannot be faulted for its lack of conceptual precision, because the doctrine of prevention often blends together with other contractual and equitable doctrines. *See* 13 Williston on Contracts § 39:7 (4th ed.) (recognizing that the doctrine of prevention is often equated with or related to the doctrines of waiver, estoppel, and repudiation).

cost of replacement with no guarantee that they would be reimbursed: because the insurance company denied liability for the damaged organ, the claimants could only have received the replacement cost after they had repaired or replaced the organ and prevailed in litigation. *Id.* 336-37. The replacement provision placed an unreasonable obligation upon claimants before they had received any benefit, and thus the replacement requirement was unconscionable "despite the clear and unambiguous language of the policy." *Id.*

The Pennsylvania Superior Court later limited the holding in *Ferguson* to its facts in *Burton v. Republic Ins. Co.*, 845 A.2d 889, 898–99 (Pa. Super. Ct. 2004). *Burton* cited with approval a Court of Common Pleas judge's statement of the elements present in *Ferguson* that warranted the court's decision to excuse the replacement requirement: (1) the insurer denied liability; (2) the insureds faced the "unsavory" choice of either accepting actual cash value or expending a large sum in replacement costs without a guarantee of reimbursement; and (3) any payment of replacement value by the insurer hinged on the insureds either expending funds or obtaining a judicial determination of liability. *Id.* (citing *Rotell v. Erie Ins. Group,* 53 Pa. D. & C. 4th 533, 544 (2001)).

The *Burton* court found that the first element was not present because the insurer had admitted liability under the insured's homeowner's policy and paid the insured the actual cash value of the damage claim at the time of the loss. *Id.* at 899. Thus, the insured had money to rebuild, and the insured's right to replacement costs depended upon the insured's compliance with the replacement requirement, not upon the outcome of a lawsuit. Unlike the claimants in *Ferguson*, the insured's replacement benefits were guaranteed to the extent the insured demonstrated that the property had been replaced or repaired. As a result, the *Burton* court found that the reasoning in *Ferguson* did not apply and enforced the replacement requirement. *Id.*

The Western District of Pennsylvania also distinguished *Ferguson* in *Seto v. State Farm Ins. Co.*, No. 2:10-CV-00505, 2012 WL 1836086 (W.D. Pa. May 21, 2012). The insurer in *Seto* argued that, under the terms of the homeowner's policy, the insureds could not recover the replacement cost of their home because they did not replace it. The insureds countered that the replacement requirement did not apply because they could not hire a contractor to rebuild, having not yet received payment for the actual value of the home because the parties disagreed about the proper value. *Id.* at *2. The court found that the reasoning in *Ferguson* did not apply because the insurer had admitted liability and had in fact made a payment for the actual cash value of the home. *Id.* at *3. Moreover, the insureds admitted that they did not replace, rebuild, or repair their home, but instead razed the house and sold the property after they received payment from the insurer. *Id.*

The explanation of *Ferguson* in *Burton* and *Seto* suggests that a prevention theory best explains Pennsylvania's likely approach to replacement requirements in insurance policies. The inquiry focuses on the insurer's actions and their consequences for the insureds' ability to perform—*i.e.*, whether the insurer paid actual cash value or denied liability altogether and whether denying funds made it impossible, or at least unduly risky, for the insured to comply with the replacement condition.

The hallmarks of the situation that led the *Ferguson* court not to enforce the replacement requirement exist in this case. Cincinnati denied liability for building coverage. As a result, Prizer faced an "unsavory" choice: it could either choose not to replace 200 Orrton and potentially be limited to recovering actual cash value if Cincinnati were later found liable for building coverage, or it could expend a large sum in replacement costs with the risk that it might not be reimbursed if Cincinnati were later found not liable for building coverage. Therefore, any

payment of replacement value by Cincinnati hinged on either Prizer's expending funds or obtaining a judicial determination of liability. Utica argues that Cincinnati's refusal to pay any building coverage prevented Prizer from replacing the building and that, as a result, Utica "is entitled to recover for replacement costs without actually replacing his property." Mot. 12.

Utica draws too strong a conclusion. Pennsylvania's prevention doctrine requires that the actions alleged to have prevented the occurrence of a condition *actually caused* the party subject to the condition to be unable to fulfill it: "[i]f a promisor prevents or hinders the occurrence of a condition, or the performance of a return promise, *and the condition would have occurred were the performance of the return promise been rendered except for such prevention or hindrance*, the condition is excused." 16 Summ. Pa. Jur. 2d Commercial Law § 6:27 (2d ed.) (emphasis added). *See also Arlotte v. Nat'l Liberty Ins. Co.*, 167 A. 295, 296 (Pa. 1933) (excusing conditions of insurance policy because "[h]ad it not been for [the insurance agent's] misrepresentation of the terms of the policy, all the conditions precedent to the maintenance of this action doubtless would have been performed by plaintiffs"). Since the Supreme Court of Pennsylvania does not appear to have addressed the precise issue presented by the unique facts of this case, this Court predicts that under Pennsylvania law,[5] an insured would be able to recover replacement cost despite noncompliance with a replacement requirement where the insurer's denial of liability and failure to pay actual cash value prevents the insured from replacing the property. However, the insured must still demonstrate that, but for the insurer's

---

[5] A federal court sitting in diversity applies the substantive law of the forum state, which is Pennsylvania law in this case. *See Malone v. Weiss*, No. CV 17-1694, 2018 WL 827433, at *4 (E.D. Pa. Feb. 12, 2018) (citing *Erie R.R. v. Tomkins*, 304 U.S. 64 (1938)). When a state's highest court has yet to speak on a particular issue, the federal court must predict how the state's highest court would decide the issue were it confronted with the problem. *Jaworowski v. Ciasulli*, 490 F.3d 331, 333 (3d Cir. 2007). To make that prediction, the federal court should consider decisions of the state's intermediate appellate courts. *Id.*

denial of payment, it would have replaced the property as required.[6] *See Conrad Bros.*, 640 N.W.2d at 242 (even where insurer is determined to have repudiated the contract by denying coverage, insured must still prove that repudiation materially contributed to nonperformance of condition); *Bailey*, 498 N.W.2d at 599 (affirming trial court's finding of fact that insurer's conduct prevented insured from rebuilding).

Cincinnati disputes this very point and points to evidence that Prizer had no intention of replacing the damaged 200 Orrton. Accordingly, a disputed issue of material fact exists that prevents this Court from determining at this point whether Utica can recover the full replacement cost of the damaged 200 Orrton based on a prevention theory. To obtain replacement cost, Utica must demonstrate at trial that, but for Cincinnati's failure to pay building coverage, Prizer would have complied with the replacement requirement, such that the replacement condition in the policy must be excused. Utica's motion is denied in that this Court will hear evidence and argument from both parties as to whether the replacement requirement in the policy should be excused.

### B. Rule 37—Failure to comply with discovery obligations

Utica also argues that Federal Rule of Civil Procedure 37 should preclude Cincinnati from asserting any limitations to Utica's damages based on the replacement requirement, coinsurance, or other valuation provisions in the policy because it did not disclose those limitations in discovery. Utica contends that Cincinnati did not disclose its arguments in response

---

[6] Indeed, the alternate rule Utica suggests would result in the insured receiving the replacement cost of damaged property, even where the insured had no intention of replacing the property, so long as the insurer denied coverage and was later found liable under the policy. In other words, the insured would receive the replacement cost even though it would only have received actual value had no coverage dispute arisen. Thus, Utica's approach would unfairly give an insured more than the benefit of its bargain.

to Utica's interrogatory to describe each reason that Cincinnati disputes liability or damages sought by Utica, but instead raised its arguments for the first time in its opposition to Utica's motion for summary judgment on December 3, 2018.

Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The Third Circuit has noted four factors that are helpful in deciding what is harmless under Rule 37(c)(1): (1) prejudice or surprise to party against whom evidence is offered; (2) ability of party to cure prejudice; (3) likelihood of disruption to trial; and (4) bad faith or willfulness involved in not complying with the disclosure rules. *Mercedes Benz USA LLC v. Coast Auto. Grp. Ltd.*, No. CIV.A. 99-3121 (WHW), 2008 WL 4378294, at *2–3 (D.N.J. Sept. 23, 2008) (citation omitted), *aff'd sub nom. Mercedes-Benz USA, Inc. v. Coast Auto. Grp., Ltd.*, 362 F. App'x 332 (3d Cir. 2010). In addition to the above factors, the Third Circuit has also considered the importance of the evidence to the proffering party's case. *Id.*

Utica's motion is directed more toward excluding a legal theory than excluding evidence. Utica does not identify any specific evidence or testimony that Cincinnati did not produce. Some courts have been hesitant to apply Rule 37, which ordinarily excludes evidence and testimony, to preclude legal theories or arguments. *See Estakhrian v. Obenstine*, 233 F. Supp. 3d 824, 837 n.11 (C.D. Cal. 2017) ("Rule 37 is a discovery rule that gives courts the authority to sanction parties for failure to disclose discoverable information or failure to cooperate during discovery; it is not a sanction for the failure to timely disclose a legal theory."); *Cumulus Broad., LLC v. Okesson*, No. 3:10CV315 JCH, 2011 WL 692986, at *2 (D. Conn. Feb. 18, 2011) (finding preclusion of damages theory not warranted where theory was based on evidence already exchanged by the

parties); *Hardy v. Town of Greenwich*, No. 3:06CV833 MRK, 2008 WL 5117370, at *7–8 (D. Conn. Dec. 3, 2008) (expressing doubt that Rule 37(c) precludes an undisclosed legal theory, but finding that Rule 37(c) did not bar new legal theory even if it applied). This Court is similarly hesitant in this case, given that Cincinnati's damage limitations arguments implicate only the terms of the Cincinnati policy that is already part of the record.

Yet even if Rule 37(c) does apply, this Court concludes that it does not warrant precluding Cincinnati's damages arguments. Although Utica argues that it would be unfairly prejudiced if this Court permits Cincinnati to argue damages limitations, it has not identified a specific risk of prejudice or surprise. Nor does this Court discern one: as Cincinnati states, its arguments about damages limitations rest on the policy language alone, and Utica has obviously been aware of the policy terms since the start of this litigation. Given that Cincinnati's arguments rely on evidence already in the record, the arguments will not likely disrupt trial. This Court does not perceive any sign of bad faith or willfulness on Cincinnati's part in not disclosing its damages limitations sooner. Utica raised its argument that it is entitled to replacement cost for the first time in its motion for summary judgment, and Cincinnati raised its damages limitations in response. Given that Cincinnati takes the position that the insurance policy clearly limits Utica's recovery to the actual value of 200 Orrton, it likely had no reason to believe that Utica would argue otherwise or that Cincinnati would need to raise the limitations arguments until Utica filed its motion for summary judgment. This Court concludes that precluding Cincinnati's damages arguments is not warranted under Rule 37(c).

Accordingly, Utica's Rule 37(c) motion is denied, but with one caveat. Although Cincinnati has raised coinsurance penalties as a limitation on damages, its argument on the specifics of that point has been sparse, both on summary judgment and in response to the instant

motion. To avoid unfair surprise to Utica, Cincinnati will be limited to the policy documents and to evidence it produced during discovery as support for its arguments with respect to damages.

### III. CONCLUSION

For the reasons discussed above, Utica's motion in limine is denied. A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge